UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMPA ELECTRIC COMPANY, a Florida Corporation,

    Plaintiff,

v.

Case No.:

REMEE PRODUCTS CORP., a New York Corporation, and ANIXTER, INC., a Delaware Corporation,

    Defendants.
_____/

## COMPLAINT

Plaintiff, TAMPA ELECTRIC COMPANY, a Florida Corporation, through the undersigned counsel, sues the Defendants, REMEE PRODUCTS CORP., a New York Corporation, and ANIXTER, INC., a Delaware Corporation, and as grounds therefore alleges the following:

## PARTIES

1. Plaintiff, TAMPA ELECTRIC COMPANY ("TECO"), is a Florida Corporation with its principal place of business in Hillsborough County, Florida.

2. TEC supplies electricity to the Tampa Bay region and currently covers a service area in West Central Florida measuring approximately 2,000 square miles. TECO serves over 750,000 residential, commercial, and industrial customers, and has over 5,000 megawatts of generating capacity supplied by three power plants.

3. TECO's retail operation is regulated by the Florida Public Service Commission and its wholesale operation is regulated by the Federal Energy Regulatory Commission,

4. Within its service area, TECO utilizes more than 800 miles of fiber optic cable to supervise and communicate within its power grid.

5. Defendant, REMEE PRODUCTS CORP. ("REMEE"), is a New York Corporation with its headquarters in Florida and New York.

6. REMEE is a manufacturer of electronic wire and cable, including fiber optic cable.

7. REMEE sells and distributes fiber optic cable throughout the United States, including in Florida.

8. Defendant, ANIXTER, INC. ("ANIXTER"), is a Delaware Corporation with its headquarters in Glenview, Illinois.

9. ANIXTER is a supplier and distributor of communications products.

10. ANIXTER sells and distributes electronic wire and cable, including fiber optic cable, through the United States, including in Florida.

## JURISDICTION and VENUE

11. This action falls within this Court's diversity jurisdiction under 28 U.S.C.A. §1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

12. Venue is proper within this judicial district under 28 U.S.C.A. §1391(b)(2) as to REMEE because it is where a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of the property that is the subject of this action is situated.

13. Venue is proper within this judicial district under 28 U.S.C.A. §1391(b)(2) as to ANIXTER because it is where a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of the property that is the subject of this action is situated.

14. This Court has personal jurisdiction over REMEE under §48.193, Florida Statutes, through one or more of the following:

    a. REMEE operates, conducts, engages in, or carries on a business venture in this state or has an officer or agency in this state.

    b. REMEE caused injury to persons or property within this state arising out of an act or omission by it outside this state, and:

        i. REMEE was engaged in solicitation or service activities within this state; or
        ii. Products, materials, or things processed, serviced, or manufactured by REMEE anywhere were used or consumed within this state in the ordinary courts of commerce, trade, or use.

    c. REMEE is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise.

15. This Court has personal jurisdiction over ANIXTER under §48.193, Florida Statutes, through one or more of the following:

    a. ANIXTER operates, conducts, engages in, or carries on a business or business venture in this state or has an officer or agency in this state.

    b. ANIXTER committed a tortious act within this state.

    c. ANIXTER caused injury to persons or property within this state arising out of an act or omission by it outside this state, and:

        i. ANIXTER was engaged in solicitation or service activities within this state; or
        ii. Products, materials, or things processed, serviced, or manufactured by ANIXTER anywhere were used or consumed within this state in the ordinary courts of commerce, trade, or use.

    d. ANIXTER breached a contract in this state by failing to perform acts required by the contract to be performed in this state.

    e. ANIXTER is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise.

## **COMMON FACTS & ALLEGATIONS**

16. From August 2015, through December 2017, TECO purchased approximately 504,157 feet of fiber optic cable from ANIXTER (hereinafter "the subject fiber optic cable").

17. The subject fiber optic cable was designed and manufactured by REMEE.

18. The subject fiber optic cable was sold and distributed to TECO by ANIXTER.

19. TECO paid ANIXTER in excess of $511,000.00 for the subject fiber optic cable.

20. The subject fiber optic cable was to be, among other specifications, for outdoor commercial use, weather resistant, rodent resistant, and double jacketed.

21. The subject fiber optic cable was to be installed in outdoor locations, including on power poles, and exposed to the elements.

22. TECO's intended use of the subject fiber optic cable was to supervise and communicate within its power grid.

23. REMEE and ANIXTER were aware of the intended use and areas of use and installation.

24. TECO began installing the subject fiber optic cable in September 2015 throughout its service area.

25. The cost of the installation of the subject fiber optic cable to TECO has been in excess of $634,000.00.

26. In late 2017 and early 2018, through the course of normal operations and maintenance of its power grid, TECO began discovering cracks and breaks in the subject fiber optic cable.

27. The cracks and breaks are primarily to the outer jacket of the subject fiber optic cable, which is intended to protect the fiber optic cable

28. The cracks and breaks in the subject fiber optic cable evidences a defect in its design or

manufacturing, or both.

29. The defects in the subject fiber optic cable were latent at the time of its purchase and installation.

30. Upon their discovery, TECO put REMEE and ANIXTER on notice of the defects in the subject fiber optic cable.

31. REMEE and ANIXTER have failed to repair or replace the defective subject fiber optic cable, and/or that have failed to reimburse TECO for the cost of the purchase and installation of the defective subject fiber optic cable.

**COUNT I**
**Products Liability – REMEE**

32. Plaintiff, TECO, reasserts the facts and allegations asserted in paragraphs one through 31 above.

33. REMEE had a duty to design and manufacture the subject fiber optic cable free of defects.

34. REMEE had a duty to warn TECO of any known risks or defects in the subject fiber optic cable.

35. REMEE placed the subject fiber optic cable into the stream of commerce.

36. The cracks and breaks in the subject fiber optic cable and its outer jacket are defects in the product.

37. The cracks and breaks in the subject fiber optic cable evidences that the subject fiber optic cable was either defectively designed or manufactured by REMEE, or both.

38. REMEE failed to warn TECO of the known risks and defects in the subject fiber optic cable.

39. At all materials times, TECO was using the subject fiber optic cable as was intended or in

a manner that REMEE could reasonably expect.

40. Due to the defects in the subject fiber optic cable, TECO has sustained losses and damages, including but not limited to:

    a. The cost of the purchase of the subject fiber optic cable.

    b. The cost of the installation of the subject fiber optic cable.

    c. The cost of repairing and/or replacing the subject fiber optic cable.

    d. Loss of use.

    e. Cost of increased inspection and maintenance of TECO's power grid.

    f. Loss of integrity of the outer jacket and the protection it was meant to provide.

41. As the designer and manufacturer of the subject fiber optic cable, REMEE is liable for these damages.

WHEREFORE, Plaintiff demands judgment against Defendant, REMEE, for damages under Count I and for all other damages allowable under Florida law and which this Court deems appropriate.

## COUNT II
### Negligence – REMEE

42. Plaintiff, TECO, reasserts the facts and allegations asserted in paragraphs one through 31 above.

43. REMEE had a duty to design and manufacture the subject fiber optic cable free of defects.

44. The cracks and breaks in the subject fiber optic cable and its outer jacket are defects in the product.

45. The cracks and breaks in the subject fiber optic cable evidences that the subject fiber optic cable was either defectively designed or manufactured by REMEE, or both.

46. REMEE breached its duty by either designing or manufacturing, or both, the subject fiber optic cable with defects.

47. Due to REMEE's breach of duty, TECO has sustained losses and damages, including but not limited to:

    a. The cost of the purchase of the subject fiber optic cable.

    b. The cost of the installation of the subject fiber optic cable.

    c. The cost of repairing and/or replacing the subject fiber optic cable.

    d. Loss of use.

    e. Cost of increased inspection and maintenance of TECO's power grid.

    f. Loss of integrity of the outer jacket and the protection it was meant to provide.

WHEREFORE, Plaintiff demands judgment against Defendant, REMEE, for damages under Count II and for all other damages allowable under Florida law and which this Court deems appropriate.

### COUNT III
### Products Liability – ANIXTER

48. Plaintiff, TECO, reasserts the facts and allegations asserted in paragraphs one through 31 above.

49. ANIXTER, as the seller and distributor of the subject fiber optic cable, had a duty to ensure that it was free of defects.

50. ANIXTER had a duty to warn TECO of any known risks or defects in the subject fiber optic cable.

51. ANIXTER placed the subject fiber optic cable into the stream of commerce.

52. The cracks and breaks in the subject fiber optic cable and its outer jacket are defects in the product.

53. The cracks and breaks in the subject fiber optic cable evidences that the subject fiber optic cable was defective.

54. ANIXTER failed to warn TECO of the known risks and defects in the subject fiber optic cable.

55. At all materials times, TECO was using the subject fiber optic cable as was intended or in a manner that ANIXTER could reasonably expect.

56. Due to the defects in the subject fiber optic cable, TECO has sustained losses and damages, including but not limited to:

    a. The cost of the purchase of the subject fiber optic cable.

    b. The cost of the installation of the subject fiber optic cable.

    c. The cost of repairing and/or replacing the subject fiber optic cable.

    d. Loss of use.

    e. Cost of increased inspection and maintenance of TECO's power grid.

    f. Loss of integrity of the outer jacket and the protection it was meant to provide.

57. As the seller and distributor of the subject fiber optic cable, ANIXTER is liable for these damages.

WHEREFORE, Plaintiff demands judgment against Defendant, ANIXTER, for damages under Count III and for all other damages allowable under Florida law and which this Court deems appropriate.

### COUNT IV
### Breach of Contract – ANIXTER

58. Plaintiff, TECO, reasserts the facts and allegations asserted in paragraphs one through 31 above.

59. At all materials times, a valid contract existed between TECO and ANIXTER for the sale

and purchase of the subject fiber optic cable. A copy of the contract is attached hereto as Exhibit A.

60. ANIXTER has breached the contract by, among other things:

   a. Selling the defective subject fiber optic cable to TECO.

   b. Failing to warn TECO that the subject fiber optic cable was defective.

   c. Failing to correct or replace the defective subject fiber optic cable.

61. Due to ANIXTER's breach of contract, TECO has sustained losses and damages, including but not limited to:

   a. The cost of the purchase of the subject fiber optic cable.

   b. The cost of the installation of the subject fiber optic cable.

   c. The cost of repairing and/or replacing the subject fiber optic cable.

   d. Loss of use.

   e. Cost of increased inspection and maintenance of TECO's power grid.

   f. Loss of integrity of the outer jacket and the protection it was meant to provide.

WHEREFORE, Plaintiff demands judgment against Defendant, ANIXTER, for damages under Count IV and for all other damages allowable under Florida law and which this Court deems appropriate.

## COUNT V
### Breach of Expressed Warranty – ANIXTER

62. Plaintiff, TECO, reasserts the facts and allegations asserted in paragraphs one through 31 above.

63. At all materials times, an expressed warranty existed between TECO and ANIXTER for the sale and purchase of the subject fiber optic cable. See Exhibit A.

64. ANIXTER has breached the expressed warranty by, among other things:

    a. Selling the defective subject fiber optic cable to TECO.

    b. Failing to warn TECO that the subject fiber optic cable was defective.

    c. Failing to correct or replace the defective subject fiber optic cable.

65. Due to ANIXTER's breach of expressed warranty, TECO has sustained losses and damages, including but not limited to:

    a. The cost of the purchase of the subject fiber optic cable.

    b. The cost of the installation of the subject fiber optic cable.

    c. The cost of repairing and/or replacing the subject fiber optic cable.

    d. Loss of use.

    e. Cost of increased inspection and maintenance of TECO's power grid.

    f. Loss of integrity of the outer jacket and the protection it was meant to provide.

WHEREFORE, Plaintiff demands judgment against Defendant, ANIXTER, for damages under Count V and for all other damages allowable under Florida law and which this Court deems appropriate.

## COUNT VI
### Breach of Implied Warranty – ANIXTER

66. Plaintiff, TECO, reasserts the facts and allegations asserted in paragraphs one through 31 above.

67. At the time of its sale, ANIXTER knew the intended purpose of the subject fiber optic cable.

68. At the time of its sale, there existed an implied warranty that the subject fiber optic cable was fit for its intended purpose.

69. At the time of its sale, there existed an implied warranty that the subject fiber optic cable was merchantable.

70. ANIXTER has breached the implied warranty by, among other things:

    a. Selling the defective subject fiber optic cable to TECO.

    b. Selling fiber optic cable that was not fit for its intended purpose.

    c. Selling fiber optic cable that was not fit for the ordinary purposes for which such goods are used.

    d. Selling fiber optic cable that was not of fair average quality within its description.

    e. Selling fiber optic cable that did not conform to the promises or affirmations made at the time of sale.

    f. Failing to warn TECO that the subject fiber optic cable was defective.

    g. Failing to correct or replace the defective subject fiber optic cable.

71. Due to ANIXTER's breach of implied warranty, TECO has sustained losses and damages, including but not limited to:

    a. The cost of the purchase of the subject fiber optic cable.

    b. The cost of the installation of the subject fiber optic cable.

    c. The cost of repairing and/or replacing the subject fiber optic cable.

    d. Loss of use.

    e. Cost of increased inspection and maintenance of TECO's power grid.

    f. Loss of integrity of the outer jacket and the protection it was meant to provide.

WHEREFORE, Plaintiff demands judgment against Defendant, ANIXTER, for damages under Count VI and for all other damages allowable under Florida law and which this Court deems appropriate.

## COUNT VII
### Breach of Implied Warranty – REMEE

72. Plaintiff, TECO, reasserts the facts and allegations asserted in paragraphs one through 31

above.

73. At the time of its design and manufacture and distribution, REMEE knew the intended purpose of the subject fiber optic cable.

74. At the time of its design and manufacture and distribution, there existed an implied warranty that the subject fiber optic cable was fit for its intended purpose.

75. At the time of its design and manufacture and distribution, there existed an implied warranty that the subject fiber optic cable was merchantable.

76. REMEE has breached the implied warranty by, among other things:

    a. Designing and manufacturing and distributing the defective subject fiber optic cable to TECO.

    b. Designing and manufacturing and distributing fiber optic cable that was not fit for its intended purpose.

    c. Designing and manufacturing and distributing fiber optic cable that was not fit for the ordinary purposes for which such goods are used.

    d. Designing and manufacturing and distributing fiber optic cable that was not of fair average quality within its description.

    e. Designing and manufacturing and distributing fiber optic cable that did not conform to the promises or affirmations made at the time it was distributed.

    f. Failing to warn TECO that the subject fiber optic cable was defective.

    g. Failing to correct or replace the defective subject fiber optic cable.

77. Due to REMEE's breach of implied warranty, TECO has sustained losses and damages, including but not limited to:

    a. The cost of the purchase of the subject fiber optic cable.

    b. The cost of the installation of the subject fiber optic cable.

    c. The cost of repairing and/or replacing the subject fiber optic cable.

    d. Loss of use.

    e. Cost of increased inspection and maintenance of TECO's power grid.

    f. Loss of integrity of the outer jacket and the protection it was meant to provide.

WHEREFORE, Plaintiff demands judgment against Defendant, REMEE for damages under Count VII and for all other damages allowable under Florida law and which this Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury in this matter on all issues so triable.

DATED this 14th day of August, 2019.

*/s/ Paul U. Chistolini*
_____

**PAUL U. CHISTOLINI**
Florida Bar No.: 645141
**KIMBERLY I. NUÑEZ**
Florida Bar No.:0124455
**Smoak, Chistolini & Barnett, PLLC**
320 W. Kennedy Blvd.
4th Floor
Tampa, FL  33606
(813) 221-1331 Telephone
(813) 223-7881 Facsimile
courtdocuments@flatrialcounsel.com
**Counsel for Plaintiff, Tampa Electric Company**